**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WHITE SPRINGS AGRICULTURAL
CHEMICALS, INC. d/b/a PCS
PHOSPHATE - WHITE SPRINGS,

    Plaintiff,

v.                                  Case No. 3:11-cv-998-J-32JRK

GAFFIN INDUSTRIAL SERVICES, INC.,
AMERICAN SAFETY RISK RETENTION
GROUP, INC., and AMERICAN SAFETY
INDEMNITY COMPANY.

    Defendants.

**ORDER**

This case is before the Court on White Springs Agricultural Chemicals, Inc.'s ("PCS") Motion for Summary Judgment As To Defendant American Safety Risk Retention Group, Inc. ("ASRRG") (Doc. 52). ASRRG has responded and cross moved for summary judgment (Doc. 76). PCS has replied to ASRRG's response and responded to its cross motion for summary judgment (Doc. 79). ASRRG has also replied (Doc. 82).[1] The Court considers the parties' briefs and accompanying exhibits (Docs. 53-72).

**I.    BACKGROUND**

    **A.    The Williams Lawsuit**

This case arises out of a separate wrongful death lawsuit against Gaffin Industrial Services, Inc. ("Gaffin"), JetStream of Houston, LLP ("JetStream"), and PCS

---

[1] The Court addresses the motions and cross motions for summary judgment between PCS and Gaffin by separate order.

for the death of Robert Williams (referred to here as the "Williams lawsuit"). His widow Lisa Williams first filed a wrongful death lawsuit as personal representative of his estate in the Circuit Court of Hillsborough County, Florida on June 5, 2009, naming PCS, Gaffin, and JetStream as defendants. (Doc. 53, Ex. V.) PCS and JetStream removed the case to this Court. (Williams v. Gaffin Industrial Services, Inc., et al., 3:09-cv-1103-J-32JRK, Doc. 1.) The Court remanded the case back to state court based on the joinder of Gaffin, a non-diverse defendant. (Williams, 3:09-cv-1103-J-32JRK, Doc. 67.) The state court then dismissed the claims against Gaffin, and PCS and JetStream removed the case again. (Williams, 3:10-cv-549-J-32JRK, Doc. 1). Lisa Williams eventually settled her claims with Gaffin, JetStream, and PCS. (See Williams, 3:10-cv-549-J-32JRK, Docs. 113, 161.)

The final operative complaint in the Williams lawsuit was the Second Amended Complaint. (Doc. 53, Ex. W.) The complaint alleged that, in June 2007, Williams, an employee of Gaffin, died while using a high-powered waterblasting gun to perform industrial waterblasting work at PCS's White Springs, Florida facility. (Doc. 53, Ex. W at ¶¶ 2, 6, 28.) Williams was allegedly performing this work under an agreement between PCS and Gaffin in which Gaffin agreed to provide equipment, including the high-powered waterblasting gun, and personnel to perform work at PCS's facility. (Id., ¶¶ 8, 11.) The high-powered waterblasting gun Williams was operating was allegedly "owned and maintained by Gaffin" and "had been improperly modified/altered by Gaffin" to shorten the barrel below the minimum required length and to remove or render inoperable the "dead man control/catch on the trigger." (Id., ¶¶ 12-14, 28.) The

complaint alleged that the gun was more dangerous as a result of these modifications, which modification ultimately led to Williams's death. (Id., ¶¶ 15, 28.) According to the complaint, Williams lost control of the waterblasting gun while cleaning inside a barometric seal tank, but the gun continued to emit a stream that lacerated his leg in several places and severed his femoral artery, which led to his death. (Id., ¶ 28.) The complaint alleged that PCS was directly negligent in failing to maintain its premises and failing to provide Williams with proper protective personal equipment, a safe waterblasting gun, and proper lighting. (Id., ¶ 35.) The complaint also alleged that PCS was strictly liable for the "ultrahazardous" and "inherently dangerous" activity Williams was performing for Gaffin. (Id., ¶¶ 37-43.) Although Gaffin was not a defendant in the Second Amended Complaint, this claim for strict liability against PCS included the allegation that Williams's accident occurred "[a]s a direct and proximate result of PCS Phosphate's wrongdoing and/or the wrongdoing of Gaffin." (Id., ¶ 43.)

### B. The PCS v. Gaffin, ASSRG, ASIC Lawsuit

PCS tendered defense of the Williams lawsuit to Gaffin and its insurers, American Safety Indemnity Company ("ASIC") and ASRRG. (Doc. 53, Ex. Y; Doc. 65, Ex. X.) PCS demanded defense and indemnity from Gaffin's insurers as an additional insured under Gaffin's insurance policies. (Doc. 65, Ex. X.) ASIC and ASRRG denied that the policies cover PCS as an additional insured and declined to offer a defense. (Doc. 53, Ex. Y; Doc. 65, Ex. X.) Gaffin likewise refused to indemnify PCS. PCS filed this action against ASRRG and ASIC alleging breach of contract for failure to defend and indemnify PCS in the Williams lawsuit, and seeking a declaration that ASRRG

and ASIC had a duty to defend and indemnify PCS in that suit.[2] (Doc. 1.) As noted above, PCS settled with the plaintiff in the Williams lawsuit and paid a sum of money. (See Docs. 31, 32.) Gaffin and its insurers contributed to the settlement payment. (Williams, 3:10-cv-549-J-32JRK, Doc. 152 at 3 n.2.) PCS originally sued ASIC as ASRRG's excess carrier because the Williams lawsuit sought damages in excess of the ASRRG policy's limit of $1,000,000. (Doc. 52 at 2 n.2.) However, as part of the settlement of the Williams lawsuit, PCS agreed to not seek recovery in this suit the amounts paid to Lisa Williams, reserving its claim for attorneys' fees and expenses. Pursuant to a partial settlement with the other parties in this case, PCS is no longer seeking indemnity for the sum it paid in the Williams settlement. (Id.) PCS seeks only to recover its reasonable attorney's fees and litigation expenses in defending the Williams lawsuit. (Id.) Thus, PCS's Motion for Summary Judgment as to ASRRG "focuses only on ASRRG's duty to defend which implicates PCS's recovery of attorneys' fees and costs incurred in defense of the Williams suit;" indemnification by ASRRG and ASIC is no longer an issue. (Doc. 52 at 2 n.2.) ASRRG and ASIC agree the only issue is whether ASRRG had a duty to defend PCS in the Williams lawsuit. (Doc. 76 at 2.)

### C. The Purchase Order

PCS is in the business of mining phosphate and producing phosphoric acid and operates a phosphoric acid plant in White Springs, Florida. (Doc. 53, Ex. A at 7-8.)

---

[2] PCS also brings claims against Gaffin for indemnification and breach of contract. (Doc. 1.) Those claims are the subject of a separate order filed contemporaneously herewith. (Doc. 87.) Gaffin cross-claimed against ASRRG and ASIC for breach of contract and declaratory relief. (Doc. 17.)

Gaffin uses waterblasting equipment to high pressure clean industrial facilities like the White Springs plant. (Id., Ex. B at 106-07.) PCS hired Gaffin as a waterblasting contractor to perform industrial waterblasting services at its White Springs facility in June 2007. (Id., Ex. C at ¶ 7, Ex. D at 61; Doc. 65, Ex. C-1.) PCS issued to Gaffin Purchase Order No. 50125964 ("Purchase Order"), dated June 5, 2007, for Gaffin to "HIGH PRESSURE CLEAN FILTERS, REACTORS, PIPELINES AND ASSOCIATED EQUIPMENT FOR SRC TURNAROUND." (Doc. 65, Ex. C-1; Doc. 53, Ex. C at ¶ 8, Ex. D at 61.) Pursuant to the Purchase Order, Gaffin was to "supply all labor, materials, equipment, tools, supervision, insurance, and all items of expense necessary to safely perform the 'work.'" (Doc. 65, Ex. C-1.) Gaffin was responsible to ensure that its employees complied with all safety rules and regulations, and "to exert primary controls . . . to obtain desired performance from [its] employees." (Id. at 14.) Paragraph 7 of the General Terms and Conditions of the Purchase Order required Gaffin to obtain insurance coverage prior to commencement of any work, including "[c]ommercial general liability insurance with a combined bodily/personal injury and property damages limit of US $4,000,000 for each occurrence" and "[b]lanket contractual liability insurance sufficiently broad to include paragraph 8 "INDEMNIFICATION." (Doc. 65-1 at 9 ¶ 7.) Paragraph 7 also required that PCS "shall be named additional insured" on the commercial liability policy and that Gaffin must provide PCS with certificates of insurance evidencing the required coverage prior to beginning the work. (Id.) Gaffin performed the work required under the Purchase Order and was paid. (Doc. 53, Ex. C at ¶ 9.)

**D.     Gaffin's Insurance Policies**

Gaffin purchased a commercial general liability insurance policy from ASRRG, Policy No. 016484-07-01 ("CGL Policy"), with policy limits of $1,000,000 (Doc. 53, Ex. F, Ex. G at 10-14), and an excess/umbrella liability policy from ASIC, Policy No. ESU01644-07-01 ("Excess Policy"), with policy limits of $5,000,000 (Doc. 53, Ex. G at 14-16) (hereinafter collectively referred to as "Gaffin's Insurance Policies"). Lassiter-Ware Insurance, Gaffin's insurance agent, issued a Certificate of Insurance indicating that Gaffin had obtained a commercial general liability insurance policy. (Doc. 53, Ex. I.) The Certificate of Insurance listed PCS as an "Additional Insured with respects [sic] to General Liability and Automobile Liability as required by written contract." (Id.) PCS received this Certificate of Insurance and thereafter signed an Insurance Limits Waiver indicating acceptance of Gaffin's coverage and stating that an additional insured provision had been provided. (Doc. 53, Ex. C at ¶ 10, Ex. C-3.)

The CGL Policy, effective May 25, 2007 through May 25, 2008, provides that ASRRG "has the right and duty to defend the insured against any 'suit' seeking damages" because of "'bodily injury' or 'property damage' to which [the] insurance applies." (Doc. 53, Ex. F at 1, 4.) The CGL Policy includes a General Amendatory Endorsement Broad Form (the "Endorsement") incorporating two additional coverage paragraphs, subparagraphs f. and g. (Id. at 29.) Subparagraph f. provides:

> Any person shown as an Additional Insured on a certificate of insurance issued by our authorized representative provided such person is required to be named as an Additional Insured in a written contract with you, shall be entitled to coverage hereunder **solely** for "claims" or "suits" for "bodily injury" or "property damage" arising **solely** out of your

6

> negligence. The limits of insurance provided to such Additional Insured shall be limited to the lesser of the limits of insurance required in a written contract with you, or the limits of insurance as described in SECTION III - LIMITS OF INSURANCE under the policy. No obligation for defense or indemnity under the policy is provided to any Additional Insured for "claims" or "suits" directly or indirectly "arising from" the status, actions or inaction, including (without limitation) for vicarious, derivative or strict liability of said Additional Insured, its agents, consultants, servants, contractors or subcontractors (other than the Named Insured), except for the actions or inactions of the Named Insured.

(Id. (emphasis added).)  Subparagraph g. provides:

> We will have no duty to defend any insured, other than the Named Insured, except when the **sole** allegation against that insured is vicarious liability for the **sole** negligence of the Named Insured.

(Id. (emphasis added).)  These paragraphs form the basis for PCS's claim of coverage.

## II.    STANDARD OF REVIEW

Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011); Fed. R. Civ. P. 56(a), (c).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  Although all facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party, Ramos-Barrientos v. Bland, 661 F.3d 587, 594 (11th Cir. 2011), "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is

'merely colorable' or 'not significantly probative.'" Vega v. Invsco Grp., Ltd., 432 F. App'x 867, 869-70 (11th Cir. 2011) (quoting Anderson, 477 U.S. at 249-50). "When the only question a court must decide is a question of law, summary judgment may be granted." Saregama India Ltd. v. Mosley, 635 F.3d 1284, 1290 (11th Cir. 2011). Contract interpretation, including whether it is ambiguous, is a question of law. Id.

"Cross motions for summary judgment do not change the standard." Perez-Santiago v. Volusia Cnty., No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, at *2 (M.D. Fla. Mar. 11, 2010) (quoting Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007)) (internal quotation marks omitted). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." Perez-Santiago, 2010 WL 917872 at *2 (citations and internal quotations omitted). When considering cross-motions for summary judgment, the Court must "consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999) (citations omitted).

### III. DISCUSSION

#### A. ASRRG's Duty to Defend PCS

PCS seeks to recover damages for ASRRG's alleged breach of a duty to defend PCS in the Williams lawsuit. ASRRG contends that it had no duty to defend PCS because PCS is not an "Additional Insured" under the CGL Policy. Additionally,

ASRRG argues that even if PCS is an Additional Insured, the policy's coverage is limited only to claims against the Additional Insured when the sole allegation against PCS is vicarious liability for Gaffin's sole negligence.

### 1. **Coverage**

Both parties agree that under Florida law, an insurer's "duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004) (citation omitted); Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So. 2d 533, 535 (Fla. 1977). "If the allegations in the complaint state facts that bring the injury within the policy's coverage, the insurer must defend regardless of the merits of the lawsuit.  Furthermore, any doubt about the duty to defend must be resolved in favor of the insured. Coverage is determined from examining the most recent amended pleading, not the original pleading." Steinberg, 393 F.3d at 1230; see also Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442-43 (Fla. 2005) ("It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.").

The first question is whether PCS is an Additional Insured under the CGL Policy.  ASRRG argues that PCS does not qualify as an Additional Insured because PCS is not specifically named as an additional insured in the CGL Policy or pursuant

to any additional insured endorsement. (Doc. 76 at 12.) The Endorsement, however, extends coverage to "[a]ny person shown as an Additional Insured on a certificate of insurance issued by our authorized representative provided such person is required to be named as an Additional Insured in a written contract with [Gaffin]." (Doc. 53, Ex. F at 29.) PCS is listed as an "Additional Insured" on the certificate of insurance issued by an authorized representative, Lassiter Ware Insurance (see Docs. 52-12, 53-13), and Paragraph 7 of the Purchase Order provides that PCS "must be named additional insured" on the CGL Policy (see Doc. 65-1 at 9 ¶ 7). PCS qualifies as an Additional Insured for the purposes of the CGL Policy.[3]

The second question is whether the allegations in the Williams lawsuit fall fairly and potentially within the coverage extended to Additional Insureds such that ASRRG must defend PCS. To answer this question, the Court looks to the allegations in the Second Amended Complaint and the language of the CGL Policy. The pertinent part of the Endorsement extends coverage to an Additional Insured "solely for 'claims' or 'suits' for 'bodily injury' or 'property damage' arising solely out of [Gaffin's] negligence." (Doc. 53, Ex. F at ¶ f.) "No obligation for defense or indemnity under the policy is provided to any Additional Insured for 'claims' or 'suits' directly or indirectly 'arising from' the status, actions or inaction, including (without limitation) for vicarious, derivative or strict liability of said Additional Insured . . . except for the actions or

---

[3] That PCS signed an Insurance Limits Waiver accepting as adequate the $1,000,000 policy limits in the CGL Policy and the $5,000,000 policy limits in the Excess Policy does not modify the contractual requirement in the Purchase Order that PCS be named as an additional insured on Gaffin's Insurance Policies.

10

inactions of the Named Insured." (Id.)  Furthermore, under subparagraph g., ASRRG has no duty to defend "any insured, other than the Named Insured, except when the sole allegation against that insured is vicarious liability for the sole negligence of the Named Insured."  (Id. at ¶ g.)

Here, the "sole allegation" against PCS in the Williams lawsuit was not for the "sole negligence" of Gaffin.  Instead, the Second Amended Complaint in the Williams lawsuit contains two counts against PCS: Count I for its direct negligence and Count II for "Strict Liability for Ultra-Hazardous/Inherently Dangerous Activity."  (Doc. 53, Ex. W at ¶¶ 32-43.)  PCS and ASRRG disagree as to whether Count II alleges a claim against PCS for the sole negligence of Gaffin or the joint negligence of PCS and Gaffin. (Compare Doc. 52 at 10-12; Doc. 79 at 4-5 with Doc. 76 at 13-14; Doc. 82 at 4-5.)  Even accepting PCS's view arguendo that Count II is only based on PCS's vicarious liability for the sole negligence of Gaffin, Count II is not the sole allegation against PCS in the Williams lawsuit.  Instead, PCS concedes, as it must, that Count I is a claim against PCS for its direct negligence in allegedly failing to maintain its premises and provide Williams with proper equipment and lighting.  (See Doc. 79 at 2; Doc. 53, Ex. W at ¶¶ 32-36.) So, while it is true that an insurer has a duty to defend the entire action even where the complaint alleges facts partially within and partially outside of coverage, C.A. Fielland, Inc. v. Fid. & Cas. Co. of N.Y., 297 So. 2d 122, 127 (Fla. 2d DCA 1974), under the plain language of subparagraph g. of the CGL Policy, no part of the Williams lawsuit would implicate coverage unless "the sole allegation against [PCS] is vicarious liability for the sole negligence of [Gaffin]" (Doc. 53, Ex.  F at ¶ g).  Because of Count

11

I, that was not the case. See Atkins v. Bellefonte Ins. Co., 342 So. 2d 837, 838 (Fla. 3d DCA 1977) ("The insurance contract determines the conditions and limits of coverage unless its provisions are contrary to law." (citations omitted)).

### 2. Ambiguity

PCS argues that subparagraphs f. and g. of the GCL Policy are ambiguous. (Doc. 52 at 12-13.) PCS contends that "[t]he first sentence of subparagraph f. and subparagraph g. limit ASRRG's duty to cover an Additional Insured to claims or suits arising from Gaffin's 'sole negligence.' But the third sentence of subparagraph f. does not include the same limitation." (Id.) PCS reads the third sentence to provide broader coverage requiring ASRRG to "defend or indemnify an Additional Insured for claims or suits for the actions or inactions of Gaffin, *without regard to whether Gaffin was solely negligent or jointly negligent.*" (Id. at 13.)

"Florida courts start with 'the plain language of the policy, as bargained for by the parties.'" Steinberg, 292 F.3d at 1230 (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). "If that language is unambiguous, it governs. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered 'ambiguous,' and must be 'interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" Id.

The Court finds the language in subparagraphs f. and g. unambiguous. See Continental Cas. Co. v. Am. Safety Cas. Ins. Co., 365 S.W. 3d 165, 170 (Tex. App. 2012)

12

(construing identical policy language and concluding that "the policy unambiguously provides defense coverage to [additional insured] only in the event that [additional insured] is alleged to be vicariously liable for [named insured's] own sole negligence.") The first sentence of subparagraph f. sets out the limited coverage for an Additional Insured for claims arising solely out of Gaffin's negligence.  The third sentence of subparagraph f. then explains that this limited coverage only includes claims or suits arising from the actions or inaction of Gaffin; it simply clarifies that ASRRG owes no defense or indemnification for the "status, actions or inaction" of anyone other than Gaffin.  Subparagraph g. acts as a further limit on ASRRG's duty to defend any insured other than Gaffin by restricting the duty to defend to claims where the sole allegation against that insured is vicarious liability for the sole negligence of Gaffin.  The plain language of these repeated limitations is not susceptible to any reasonable interpretation whereby ASRRG owes a duty to defend PCS under the allegations of the Second Amended Complaint in the Williams lawsuit.

Under the plain language of the CGL Policy, ASRRG did not owe a duty to defend PCS in the Williams lawsuit and, therefore, did not breach any contract with PCS by failing to do so.  The Court will enter judgment for ASRRG on Counts III and IV after the conclusion of all remaining issues in this case.

Accordingly, it is hereby

**ORDERED:**

1.     White Springs Agricultural Chemicals, Inc's Motion for Summary

13

Judgment As To Defendant American Safety Risk Retention Group, Inc. (Doc. 52) is **DENIED**.

  2. American Safety Risk Retention Group, Inc.'s Cross Motion for Summary Judgment (Doc. 76) is **GRANTED**.

  **DONE AND ORDERED** at Jacksonville, Florida, on this 6th day of March, 2014.

_____
TIMOTHY J. CORRIGAN
United States District Judge

bjb.
Copies:

Counsel of Record

14